TATE, Justice.
The defendant Maenza was convicted of simple burglary, La. R.S. 14:62, and sentenced as a multiple offender, La. R.S. 15:529.1, to 15 years at hard labor. Upon his appeal, he relies upon one assignment of error.
The assignment relates to the introduction as rebuttal testimony of evidence as to a prior out-of-court statement of Maenza’s co-defendant at the trial, Mrs. Younkins. The chief basis of the assignment is that this inculpatory statement was improper rebuttal.
(1)
Maenza and Mrs. Younkins were jointly charged and tried with burglary of a residence. The state made out a strong circumstantial case:
Immediately prior to discovery of the burglary, Mrs. Younkins was found parked in a car in the driveway of the residence. Shortly afterwards, Maenza was detained while leaving the rear of the premises.
Upon immediate investigation, a back window was found to have been broken, through which entry had apparently been made. The bedroom had been ransacked, and clothes were piled at the head of the stairs, as if for preparation to be removed. A button matching those on Maenza’s coat was found in the back of the premises, while analysis of glass shards found on Maenza’s boot soles and clothes were found to match the glass of the broken window.
Upon proper proof of voluntariness outside of the jury’s presence, the state also introduced evidence as to exculpatory written statements made by the co-defendants to the police after the crime. The statements were to the effect that they were ringing doorbells and knocking on doors in an attempt to locate an acquaintance who might afford employment to Maenza.
(2)
Also, outside the presence of the jury, the state attempted to lay a foundation to introduce an additional oral statement made by Mrs. Younkins, the co-defendant, which was inculpatory in nature as to both defendants.
The trial court sustained the defendants’ objection to admission of this inculpatory statement as part of the state’s case in chief. The defense objection was based upon the denial of Maenza’s confrontation (cross-examination) rights by the admission into evidence of his co-defendant’s out-of-court unsworn statement adverse to him. Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); State v. Monroe, 305 So.2d 902, 915 (La.1974).
At this time, in response to a state request for an anticipatory ruling, the trial court noted that, if Mrs. Younkins did take the stand, then the statement would be admissible in rebuttal. (Then, since cross-examination was available as to Mrs. Youn-kins’ sworn trial testimony, the court noted that Maenza’s constitutional rights would not be violated.)
After the state rested, Mrs. Younkins did testify in her defense and that of her co-defendant. She repeated in substance the content of her prior written statement given to the police, namely, that she and Maen-za were in the neighborhood ringing doorbells and knocking on doors in an attempt to locate an acquaintance who allegedly lived nearby.
*1188 On cross-examination, she replied affirmatively to the question of whether she had given the written statement to which the police officer had testified. She was then asked if he had given that identified officer “any other statement” or “any oral statement or oral information other than what’s contained in those statements.” She replied in the negative to these questions.
Over objection, the state was permitted to call the police officer in rebuttal. He testified that Mrs. Younkins had orally furnished him certain incriminating information,[1] but that she did not wish to include this in her written statement since she was in love with Maenza.
After the state’s rebuttal testimony, the trial court reopened the defense case to permit Mrs. Younkins to testify. She positively denied having made the oral inculpa-tory statement.
(3)
The sole basis of the objection to the evidence as to the prior out-of-court statement was that it constituted improper rebuttal and that, if introduced as a prior inconsistent statement, Mrs. Younkins was not first asked as to the substance of the earlier statement, a predicate to its independent admission as impeaching testimony. See La. R.S. 15:493.
Under the circumstances shown, this objection is without merit.
The testimony rebutted Mrs. Younkins’ testimony that she had given the other statement. It was not improper rebuttal:
The state did not unfairly attempt to prejudice the defendant by reserving an important part of its case-in-chief to rebuttal-—on the contrary, it tried unsuccessfully to introduce the evidence earlier, with full notice to the defense of its intent to introduce it in rebuttal should it become, admissible through Mrs. Younkins subjecting herself to cross-examination through testifying. By reopening the case to permit the defense to counter the rebuttal testimony, the trial court cured any prejudice occasioned defendants, where new evidence offered in rebuttal may not ordinarily be explained or denied by the accused, La. R.S. 15:282. See State v. Turner, 337 So.2d 455, 458 (La.1976).
We likewise find no merit to the technical objection as to the alleged lack of pre-requisite foundation for introduction of a prior inconsistent statement for impeachment purposes, La. R.S. 15:493.
The statement was introduced as an admission of a co-defendant. It rebutted her trial testimony of an innocent explanation for the presence on the scene of herself and her co-defendant.
The statement was introduced in proof of the defendant’s guilt, not simply to impeach her trial credibility. “Regardless of the precise theory of admissibility, it is clear today that admissions of a party come in as substantive evidence of the facts admitted, and that no foundation or predicate, by examining the party himself, such as may be required for impeaching evidence, is prerequisite for proof of admission.” McCormick on Evidence, Section 262 at pp. 629-630 (2d ed. 1972).[2]

Decree

Since we find no merit to the assignment urged, we affirm the conviction and sentence.
AFFIRMED.

. Mrs. Younkins’ oral statement to the police officer was to the effect that, prior to the offense, Maenza had told her to drive into the driveway of the burglarized premises and to get out and ring the doorbell. When no one answered, Maenza walked into the fenced yard of the premises and went to the back of the house subsequently found to have been entered through a broken back window and ransacked.

. Of course, admissions of a defendant involving a criminal intent must, like confessions, be first affirmatively shown to have been free and voluntary. La. R.S. 15:451, 454. No contention is here made that such predicate was not well established in the present case.