STATE OF NEBRASKA, APPELLANT, v. KENNETH E. BRENNEN, APPELLEE.

336 N.W.2d 79

Filed June 24, 1983. No. 83-276.

Donald L. Knowles, Douglas County Attorney, and Robert G. Sigler, for appellant.

James Martin Davis and Anthony Troia, for appellee.

CAPORALE, J.

The State has appealed, pursuant to the provisions of Neb. Rev. Stat. § 29-824 (Reissue 1979), from an order of the Honorable Samuel P. Caniglia, a judge of the Nebraska Fourth Judicial District Court, Douglas County. That order sustained defendant Kenneth E. Brennen's motion to suppress evidence obtained by the interception of certain telephone conversations and to quash a search warrant.

On February 19, 1982, the Douglas County attorney sought, under the provisions of Neb. Rev. Stat. §§ 86-701 through 86-712 (Reissue 1981), an order to intercept conversations over eight telephones. The request was contained in a document entitled ''Application and Affidavit'' and was sworn to by the Douglas County attorney before the Honorable John T. Grant, another judge of the aforesaid District

Court. Five of the telephones were at an Omaha restaurant-bar, and included two pay telephones; two were at another Omaha bar, and included one pay telephone; the remaining telephone was located at defendant's residence. The document before Judge Grant on February 19, 1982, listed both citizen and other confidential police informants, at least some of whom had provided reliable information in the past. Although the document does not specifically state when the information was obtained from the informants, it is nonetheless reflective of an ongoing situation, and its general tenor does make it clear that the defendant was currently engaged as an active supplier of cocaine. The affidavit further recites that defendant had been seen using telephones for the purpose of engaging in drug sales.

Some of the information received from certain confidential sources corroborated that received from other confidental sources, so that the entire document tends to be self-correlating. The affidavit recites that defendant's activities had been under investigation since August of 1981, and detailed certain surveillance activities conducted from December 18, 1981, through February 11, 1982. The surveillance revealed nothing of significance except perhaps that defendant frequented the restaurant-bar and bar at which the telephones in question were located. The affidavit further recites that seldom has surveillance enabled officers to gather sufficient evidence to arrest individuals engaged in illegal drug operations, because many police officers are known to drug dealers and the dealers are suspicious of persons they do not know and are therefore unlikely to commit overt acts in the presence of unknown undercover agents. Moreover, extensive surveillance of the defendant's residence was even more difficult than it might otherwise have been by virtue of an earlier homicide in the area which had made the residents in the area very sensitive to strange ve-

hicles either driving through or parking in the neighborhood. On February 19, 1982, Judge Grant found there was probable cause to believe that defendant and certain other named individuals had committed and were about to commit illegal drug activities from the establishments and residence at which the communications were to be intercepted and that there was probable cause to believe that particular communications concerning those illegal activities might be obtained if interception of telephone conversations were authorized. He further found that other police investigative methods had been attempted and were unsuccessful and reasonably appeared to be unlikely to succeed in the future. Accordingly, he authorized certain members of the Omaha Police Department and officers of the Douglas County sheriff's office to intercept the oral communications of defendant and others named, together with those of persons as yet unknown and unidentified, for a period of 30 days. The order required that the Douglas County attorney make interim reports every 10 days concerning the number and nature of calls intercepted, and further ordered that the process be conducted in such a manner as to minimize interceptions not relating to the offense enumerated in the order. On March 9, 1982, Judge Grant entered an order terminating the authorization to intercept conversations over the five telephones located at the restaurant-bar. On March 12, 1982, the Douglas County attorney presented an "Amendment for [sic] Application and Affidavit" to Judge Grant, seeking a modification of the prior order so as to allow, for the remainder of the original 30 days, the full-time interception of the oral communications of Kenneth Brennen over the three remaining telephones, and to "allow the gathering of evidence in which to show a conspiracy between party Kenneth BRENNEN and other individuals mentioned in this affidavit, both named and unnamed." That document also recited that approxi-

mately 51 criminal calls had been intercepted relating to illegal drug transactions since February 20, 1982, the first day on which interceptions occurred. Judge Grant entered an amended order permitting full-time interception over the three remaining telephones and also over an additional one over which Brennen had talked to one John Larson, a defendant in a related case. Although, as pointed out by Brennen, the application as amended did not request authority to intercept calls over the Larson telephone by number, authority to do so was sought by the language of the applications seeking to intercept conversations between Brennen and unnamed others. The amended order required adherence to "strict minimization standards."

In his brief defendant argues that the affidavit and its amendment were not sufficient to establish probable cause that he was committing, had committed, or was about to commit a crime enumerated by § 86-703. One of the enumerated crimes in that section is "dealing in narcotic or other dangerous drugs." Contrary to the defendant's claim in this regard, the affidavit and its amendment set forth the underlying circumstances in sufficient detail so as to have permitted Judge Grant to make an independent judgment as to the validity of both the facts upon which informants based their conclusions and also the bases upon which the police rested their conclusion that the informants were reliable. The affidavit and its amendment were sufficiently specific and detailed so as to meet the two-pronged test set forth in *Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969), and *Aguilar v. Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964), of (1) revealing the basis of the informant's knowledge and (2) providing sufficient facts to establish either the informant's veracity or the reliability of his report. See, also, *State v. Lozano*, 209 Neb. 772, 311 N.W.2d 529 (1981). Moreover, that two-pronged test was specifically abandoned in *Illinois*

*v. Gates*, 51 U.S.L.W. 4709, decided June 8, 1983, which held that the task of a magistrate issuing a warrant is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place. Therein, the U.S. Supreme Court ruled that the judge issuing the warrant leading to the discovery of contraband could, under the totality of the circumstances, rely upon an anonymous informant's letter which had been corroborated by independent police investigation. In *Gates* the U.S. Supreme Court reviewed a number of its prior decisions, including *Brinegar v. United States*, 338 U.S. 160, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949), and *United States v. Cortez*, 449 U.S. 411, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981), and pointed out that probable cause is a fluid concept which turns upon the assessment of probabilities, not hard certainties, in particular factual contexts which do not readily or usefully reduce to a "neat set of legal rules." *Id.* at 4714. As part of the probable cause argument, defendant points out that neither the affidavit nor its amendment states when the informants made their revelations to the police, and thus the information was too stale. It would have been a more careful and better practice to have recited in the affidavit when those revelations took place. The fact remains, however, that the affidavits made clear the investigation had been proceeding since August of 1981 and continued to and through the request for the authority to intercept the telephone conversations at issue. The original affidavit recites the defendant was currently engaged in illegal narcotics traffic. In *State v. Lozano, supra*, we quoted with approval from *United States v. Hyde*, 574 F.2d 856 (5th Cir. 1978), the rule that the question of staleness must be decided on the particular facts of each case. In view of the totality of the circumstances, as reflected in the affidavit and its amendment, it cannot

be concluded that the failure to cite the dates of the revelations defeats the showing of probable cause justifying a belief that defendant was dealing in narcotic or dangerous drugs and using the telephones for that purpose at the facilities at which the interceptions were to take place. There can be no question that under the analysis delineated in *Illinois v. Gates, supra*, Judge Grant had a substantial basis for concluding that defendant was committing, had committed, or was about to commit one of the crimes enumerated in § 86-703.

Next, defendant urges that the affidavit and its amendment are deficient in failing to establish that other investigative methods had been tried and failed or that other procedures were unlikely to succeed or were too dangerous. Defendant is correct in arguing that the interception of telephonic communications may not be the initial step in a criminal investigation and that its employment may not be indiscriminate but, rather, must be with great care. *State v. DiMauro and Kessler*, 205 Neb. 275, 287 N.W.2d 74 (1980). It is also true, however, that the telecommunications statute does not require an exhaustion of all other possible, or even all other reasonable, avenues of investigation prior to the interception of telephonic communications. It is, however, required that the affidavit satisfy the judge either that other methods have been tried and failed or that other procedures are unlikely to succeed or are too dangerous. *State v. Holmes and Beardslee*, 208 Neb. 114, 302 N.W.2d 382 (1981). The affidavit and its amendment establish that the defendant floats from one public house to another, that it is difficult to infiltrate into his group, and that surveillance at his residence is unworkable. The affidavit and its amendment meet the requisite standard in this regard.

Defendant contends that Judge Grant's order violated § 86-705(6), which requires that every order shall contain a provision that the authorization shall

be conducted in such a way so as to avoid and prevent interception of confidential communications to and from newsmen, spouses, attorneys, physicians, and ministers or priests. It is true the order contains no such language. The fact is, however, that we find no evidence in the record before us, nor has any been pointed out to us, which demonstrates that any such calls were in fact improperly intercepted. In fact, the record does show a number of attorney calls, all of which were minimized at their inception. It is the rule that no evidence may be suppressed because of technical irregularities not affecting the substantial rights of the accused. Neb. Rev. Stat. § 29-823 (Reissue 1979); *State v. Kohout*, 198 Neb. 90, 251 N.W.2d 723 (1977). The omission of the statutory language has not been shown to have affected any substantial right of the defendant.

Defendant also complains that the order did not contain language required by § 86-705(6) that the process "shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under sections 86-701 to 86-707 . . . ." Although it is again true that the order and amended order do not contain that precise language, the orders do nonetheless contain language conveying essentially the same admonition. Once again, the irregularity is a technical one and is not shown to have affected a substantial right of the defendant.

Lastly, defendant points out that the county attorney failed to make the 10-day interim reports required by the orders. This is true, except to the extent that the "Amendment for [sic] Application and Affidavit" of March 12, 1982, constituted a partial progress report. Interim reports are not required by the statute and, although it would seem to be a desirable practice to require such, the failure to insist upon them does not render the order illegal. See *State v. Kohout, supra,* wherein we refused to find

that a failure to provide interim reports rendered the interceptions unlawful.

From the record before us it appears that Judge Caniglia suppressed the fruits of the search warrant only because he found the order and amended order permitting the interception of telephonic communications to be faulty. Defendant alleges no specific defect in the warrant.

The ultimate burden of showing an unlawful interception rests upon the party against whom the fruits of the electronic surveillance are offered. *United States v. Phillips,* 540 F.2d 319 (8th Cir. 1976), *cert. denied* 429 U.S. 1000, 97 S. Ct. 530, 50 L. Ed. 2d 611 (interpreting the federal wire interception and interception of oral communications provisions of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510 et seq. (1976), on which our telephonic communications act is patterned). It is also the rule that one who seeks to suppress evidence seized pursuant to a warrant regular on its face has the burden of establishing that the warrant was invalid. *State v. Kohout, supra.* The defendant has failed to meet those burdens.

The order appealed from herein is reversed.

REVERSED.